IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Greenwood, Inc., | ) | C/A No. 6:21-cv-02085-DCC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| IES Commercial, Inc., a subsidiary of IES Holdings, Inc., and National Union Fire Insurance Company of Pittsburgh PA, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| IES Commercial, Inc., | ) | |
| | ) | |
| Third-Party Plaintiff, | ) | |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| Travelers Casualty and Surety Company of America, | ) | |
| | ) | |
| Third-Party Defendant, | ) | |
| | ) | |
| IES Commercial, Inc., | ) | |
| | ) | |
| Counter Claimant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Greenwood, Inc., | ) | |
| | ) | |
| Counter-Defendant. | ) | |

This matter is before the Court on Defendant IES Commercial, Inc.'s ("IES") Motion to Stay and Compel Arbitration. ECF No. 41. Plaintiff Greenwood, Inc. ("Greenwood") and Third-Party Defendant Travelers Casualty and Surety Company of America

("Travelers") filed a Response in Opposition, and IES filed a Reply.  ECF Nos. 45, 48.  For the reasons set forth below, the Motion is denied.

## BACKGROUND

On or about October 27, 2016, Greenwood and IES entered into an Independent Subcontractor Agreement ("the Greenwood Subcontract"), in which Greenwood agreed to provide labor and materials for the completion of the Scope of Work defined and identified therein for a project known as the VAMC Boiler Upgrade Project ("the Project") in exchange for payment by IES in the amount of $1,328,893.50.  ECF No. 34 at 2.  Prior to entering the Greenwood Subcontract, IES entered a contract ("the Master Subcontract") with Cornerstone Construction, Inc. ("Cornerstone") to perform work on the Project.  ECF No. 41 at 2.

In its Second Amended Complaint, Greenwood alleges that it has completed the Scope of Work and all of its obligations under the Greenwood Subcontract, but IES refuses to acknowledge completion and has failed to remit portions of the payment due to Greenwood as agreed.  ECF No. 34 at 3.   The Greenwood Subcontract contains a dispute resolution provision, which states:

> **15.1** Any claim or dispute arising out of, or related to this Agreement, that is not informally resolved shall be resolved by mediation, arbitration or litigation, with mediation serving as a condition precedent for any subsequent arbitration or litigation.  If the parties' [sic] do not both agree to arbitration, the dispute will be resolved in litigation.
>
> **15.2** A request for mediation shall be made in writing, delivered to the other party to the Subcontract and filed with the person or entity administering the mediation.  The mediation shall be held in the place where the Project is located, unless another location is mutually agreed upon.  The parties shall share the mediator's fees and any filing fees equally.   Agreements  reached  in  mediation  shall  be

2

> enforceable as settlement agreements in any court having jurisdiction thereof.
>
> **15.3** In the event of any action or proceed brought by either party against the other under the Subcontract Documents, the prevailing party will be entitled to recover all costs and expenses, including reasonable attorney fees, from the non-prevailing party.

ECF No. 41-4 at 4.

The Master Subcontract entered between IES and Cornerstone also contains a settlement of disputes provision in Article 14, which states:

> A.     In the event of any dispute between [Cornerstone] and [IES] involving the work to be performed hereunder, including extra work, [Cornerstone] shall issue a decision which shall be followed by [IES], without interruption, deficiency, or delay. If [IES] does not agree with such decision, [IES's] sole remedy shall be to make a claim for adjustment in the sum schedule, or other provisions of the Contract under Article 13.B hereof and the matter shall be resolved as set forth in Article 14.B or 14.C hereof as applicable.  If [IES] prevails, [IES's] sole remedy shall be the equitable adjustment, specified in either Article 14.B or 14.C, as applicable, of this Contract.  In addition to the notifications required by Article 13 of this Contract, [IES] also shall give written notice to [Cornerstone] of its disagreement with [Cornerstone's] decision not later than ten (10) days after [IES's] receipt of [Cornerstone's] decision except that, if a lesser period of time is required in order to allow [Cornerstone] to give any notice it may be required to give to any Upstream Contractor and/or the Owner under the Contract Documents and/or under Article 13 of this Contract, then [IES] shall give such notice to [Cornerstone] in such lesser period of time.
>
> B.     In case of any dispute between [Cornerstone] and [IES], in any way relating to or arising from any act or omission of any Upstream Contractor and/or the Owner or involving the Contract Documents, [IES] agrees to be bound to [Cornerstone] to the same extent that [Cornerstone] is bound to any Upstream Contractor and/or the Owner, by the terms of the Contract Documents and by any and all preliminary and final decisions or determinations made thereunder by the party, board or court so authorized by the Contract

Documents, or by law, to make such decisions or determinations, as long as [IES] is a party to such proceedings. In case of such dispute, [IES] shall comply with all provisions of the Contract Documents, allowing a reasonable time for [Cornerstone] to analyze and forward to any Upstream Contractor and/or the Owner any required communications or documentation. Whenever permitted to do so by the Contract Documents, [Cornerstone], at its option, shall (1) present to the Owner, in [Cornerstone's] name, or (2) authorize [IES] to present to any Upstream Contractor and/or the Owner, in [Cornerstone's] name, all of [IES's] claims and to answer any Upstream Contractor's and/or the Owner's claims involving [IES's] work[.]  [Cornerstone] will further invoke on behalf of [IES], or allow [IES] to invoke, those provisions in the Contract Documents for determining disputes. Nothing herein shall require [Cornerstone] to certify a claim, including a claim under a government contract, when it cannot do so in good faith. If such dispute is prosecuted or defended by [Cornerstone], [IES], at its own expense, agrees to furnish all documents, statements, witnesses, and other information required by [Cornerstone] and to pay or reimburse [Cornerstone] for all costs and expenses of every kind and nature incurred by [Cornerstone] in connection with the dispute, including attorney's fees. The Subcontract sum shall be adjusted by [IES's] allocable share determined in accordance with Article 13 hereof.

C.    Any controversy between [Cornerstone] and [IES] not relating to or arising from any action or inaction of any Upstream Contractor and/or the Owner and not involving the Contract Documents shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association. Arbitration shall be in Chicago, Illinois. The foregoing agreement to arbitrate shall be specifically enforceable in any court of competent jurisdiction. [Cornerstone] shall be entitled to consolidate or join this arbitration proceeding with any other arbitrations providing such other arbitration includes questions of fact in common with this arbitration and even though it may involve parties other than [IES]. The award rendered by the arbitrators shall be final and judgment may be entered upon it in accordance with applicable law in any court of competent jurisdiction. If [Cornerstone] contends any arbitration brought under this Article 14.C involves a controversy within the scope of Article 14.B, the arbitration shall be stayed until the procedures under Article 14.B are completed and it is

4

> determined thereunder that the controversy does not fall within Article 14.B.

ECF No. 41-2 at 9–10.

Greenwood asserts that, pursuant to the dispute resolution provision in the Greenwood Subcontract, it submitted a written request for mediation to IES on April 27, 2021, prior to filing suit. ECF Nos. 45 at 9; 45-2 (Letter to IES requesting mediation). IES refused to mediate by letter dated May 11, 2021. ECF No. 45-3 (Response Letter from IES regarding mediation request).

Thereafter, on July 13, 2021, Greenwood filed suit in this Court against IES, alleging, in its Second Amended Complaint, causes of action for breach of contract, quantum meruit, breach of contract accompanied by fraudulent act, unfair trade practices, conversion, and declaratory judgment. ECF Nos. 1, 34. On January 7, 2022, IES filed a Motion to Stay and Compel Arbitration, arguing that the arbitration agreement in the Master Subcontract governs the dispute in this case. ECF No. 41. Greenwood filed a Response in Opposition, and IES filed a Reply. ECF Nos. 45, 48. The Motion is now before the Court.

## **APPLICABLE LAW**

The Federal Arbitration Act ("FAA") establishes a "strong federal public policy in favor of enforcing arbitration agreements" and is designed to "ensure judicial enforcement of privately made agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217, 219 (1985). The FAA was enacted "in 1925 in order 'to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements on the same

5

footing as other contracts.'" *Snowden v. CheckPoint Check Cashing*, 290 F.3d 631, 639 (4th Cir. 2002) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)). "Underlying this policy is Congress's view that arbitration constitutes a more efficient dispute resolution process than litigation." *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002) (citation omitted).

The FAA provides that arbitration clauses in contracts involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Under the FAA, a district court must compel arbitration and stay court proceedings if the parties have agreed to arbitrate their dispute. *Id*. §§ 2, 3. But, if the validity of the arbitration agreement is in issue, a district court must first decide if the arbitration clause is enforceable against the parties. *Id*. § 4. "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Drews Distrib., Inc. v. Silicon Gaming, Inc.*, 245 F.3d 347, 349 (4th Cir. 2001) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)).

A party seeking to compel arbitration must do so by establishing the following four elements: (1) the existence of a dispute between the parties; (2) a written agreement that includes an arbitration provision purporting to cover the dispute; (3) the relationship of the transaction, as evidenced by the agreement, to interstate or foreign commerce; and (4) the failure, neglect, or refusal of a party to arbitrate the dispute. *Am. Gen. Life & Accident Ins. Co. v. Wood*, 429 F.3d 83, 87 (4th Cir. 2005); *see also Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991); *Energy Absorption Sys. v. Carsonite Int'l*, 377 F. Supp.

2d 501, 504 (D.S.C. 2005). "[E]ven though arbitration has a favored place, there still must be an underlying agreement between the parties to arbitrate." *Adkins*, 303 F.3d at 501 (internal quotations and citation omitted). "Whether a party agreed to arbitrate a particular dispute is a question of state law governing contract formation." *Id*. (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). "[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 81 (2000). Where a valid arbitration agreement exists and covers the claims at issue, this Court has "no choice but to grant a motion to compel arbitration." *Adkins*, 303 F.3d at 500 (4th Cir. 2002).

## **DISCUSSION**

IES moves to stay this litigation and compel all claims in this dispute to arbitration pursuant to an arbitration agreement contained in the Master Subcontract between IES and Cornerstone. ECF No. 41 at 3. Specifically, IES contends that the Greenwood Subcontract incorporates the Master Subcontract through a "flow down" provision contained in the Greenwood Subcontract, which states: "The Subcontractor shall assume toward IES all obligations and responsibilities which IES assumes toward the General Contractor, Construction Manager and/or Owner/Developer pursuant to IES's Subcontract or any Prime Contract." ECF Nos. 41 at 3; 41-4 at 2. IES relies on *Godwin v. Stanley Smith & Sons*, 386 S.E.2d 464, 466 (S.C. Ct. App. 1989), in which the South Carolina Court of Appeals held that the parties were bound to arbitrate their disputes where the subcontract between the parties did not contain an arbitration agreement but incorporated the terms of the general contract between the contractor and the owner, which contained an arbitration clause. ECF No. 41 at 4–5. Similarly, IES

7

argues that there is no arbitration provision in the Greenwood Subcontract, and the arbitration agreement in the Master Subcontract applies because the controversy between IES and Greenwood involves a dispute that does "not relate[] to or arise[] from any action or inaction of any Upstream Contractor and/or the Owner," and therefore must be arbitrated.  ECF Nos. 41 at 3; 41-2 at 10.  Moreover, because Travelers undertook to perform the obligations of the Greenwood Subcontract in its bond, IES asserts that its claims against Travelers must also be arbitrated pursuant to the arbitration agreement.  ECF No. 41 at 3.

In contrast, Greenwood contends that the dispute resolution provision contained in the Greenwood Subcontract governs the issues in this case because the parties specifically agreed to mediate all disputes before resorting to arbitration or litigation and that arbitration would only be conducted if both parties agreed.  ECF No. 45 at 4.  Otherwise, the dispute would be litigated.  *Id.*  Greenwood argues that *Godwin* is distinguishable because the subcontract at issue in that case was silent on the issue of arbitration, while the Greenwood Subcontract expressly provides that arbitration would occur only by mutual agreement.  *Id.* at 4–5.  Consequently, Greenwood claims that the parties' intent regarding dispute resolution is evident from the plain terms of the Greenwood Subcontract, and even if the terms of the Master Subcontract are incorporated into it, the Greenwood Subcontract cannot be read to incorporate terms that directly conflict with its other express provisions.  *Id.* at 5.  Nevertheless, Greenwood maintains that the Master Subcontract is not incorporated into the Greenwood Subcontract because the so-called "flow down" provision is contained in the paragraph of

8

the Greenwood Subcontract that discusses the performance of work on the project and is thus limited to only that subject. *Id.* at 6–7.

Having reviewed the arguments and submissions of the parties, the Court finds Greenwood's allegations against IES are governed by the dispute resolution provision contained in the Greenwood Subcontract. Although a dispute clearly exists between the parties, the Court declines to compel the parties to arbitration because the arbitration agreement contained in the Master Subcontract does not purport to cover the dispute. *See Wood*, 429 F.3d at 437 (holding a party seeking to compel arbitration must establish "a written agreement that includes an arbitration provision purporting to cover the dispute"). Instead, the plain language of the dispute resolution provision in the Greenwood Subcontract clearly demonstrates the parties' intent to litigate or arbitrate disputes arising out of the agreement after first having pursued informal resolution and mediation, and if both parties do not agree to arbitration, then the dispute is to be resolved through litigation. *See Stevens Aviation, Inc. v. DynCorp Int'l LLC*, 756 S.E.2d 148, 152 (S.C. 2014) ("Contract interpretation begins with the plain language of the agreement." (quoting *Gould, Inc. v. United States*, 935 F.2d 1271, 1274 (Fed. Cir. 1991))). The Court finds *Godwin* distinguishable because the Greenwood Subcontract is not silent on the issue of arbitration; rather, it clearly provides that arbitration will only be conducted upon agreement by both of the parties.[1] Therefore, because there is no arbitration agreement

---

[1] Even if the Master Subcontract were incorporated into the Greenwood Subcontract, as IES claims, the arbitration agreement in the Master Subcontract arguably conflicts with the parties' express intention regarding arbitration in the dispute resolution provision of the Greenwood Subcontract and cannot be enforced. *See McGill v. Moore*, 672 S.E.2d 571, 574 (S.C. 2009) ("The cardinal rule of contract interpretation is to ascertain and give legal effect to the parties' intentions as determined by the contract language.").

entered between the parties which purports to cover the dispute in this case, Greenwood is not required to arbitrate its claims against IES.[2]  *See Great Am. Ins. Co. v. Hinkle Contracting Corp.*, 497 Fed. App'x 348, 352 (4th Cir. Nov. 28, 2012) ("A party will not be required to arbitrate a dispute that the party has not agreed to submit to arbitration." (citing *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960))).

## **CONCLUSION**

For the reasons set forth above, Defendant IES Commercial, Inc.'s Motion to Stay and Compel Arbitration [41] is **DENIED**.

IT IS SO ORDERED.

s/ Donald C. Coggins, Jr.
United States District Judge

June 28, 2022
Spartanburg, South Carolina

---

[2] For the same reasons, IES's third-party claims against Travelers cannot be compelled to arbitration.